## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| FREDERICK CARLETON, | ) | |
| BARRY HORWITZ, | ) | |
| ELLA RABER, | ) | |
| DOROTHEA PARKS, | ) | |
| ANN FRANK and | ) | |
| SHERRI FRANK WEINTROP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  4:22-cv-113 |
| | ) | |
| COMMUNITY HOUSING | ) | |
|     MANAGEMENT CORP., | ) | |
| JOAN DENISON, | ) | |
| JACQUELINE JONES/TAYLOR | ) | **JURY TRIAL DEMANDED** |
| KATISHA REESE | ) | |
| RANDALL REINKER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, FREDERICK CARLETON, BARRY HORWITZ, ELLA RABER, DOROTHEA PARKS, ANN FRANK, and SHERRI FRANK WEINTROP (hereinafter "Plaintiffs"), as and for their Complaint against Defendants COMMUNITY HOUSING MANAGEMENT CORP., JOAN DENISON, JACQUELINE JONES/TAYLOR, KATISHA REESE and RANDALL REINKER (hereinafter "Defendants"), allege as follows:

## INTRODUCTION

1.      Plaintiffs are the elderly residents, or family members of residents, who have been subject to fraud and coercion by defendants through an enterprise controlling the management company of a federally subsidized housing complex.

2.      Members of the property management company attempted to hide their fraud by hiring a law firm to falsely allege Plaintiffs violated the lease between the parties and then evict the tenant as punishment for asserting their rights under the lease.

3.      Such conduct was as a pattern or practice of dealing with those who complained that their income was being miscalculated by members of the management company and Defendants derived income for and from their fraudulent actions.

4.      The need for such relief is immediate and the resulting damages are irreparable as ELLA RABER and DOROTHEA PARKS, two Plaintiffs, currently have judgments entered against them on December 27, 2021, in state court in case number 21SL-AC15181 and 21SL-AC15198 respectively and RANDALL REINKER is seeking to remove them from their homes upon execution, having been denied the right to a jury trial because of Defendants' fraudulent acts.  Without this Court's immediate action Plaintiffs are left with no adequate remedy as they have been deprived of a jury trial in an Unlawful Detainer action as a result of Defendants' willful actions and are on fixed incomes and cannot afford a "market rate" bond to appeal the state court matter.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and 42. U.S.C. § 1983 in that this action seeks to redress the deprivation of,

under color of the laws, statute, ordinances, regulations, customs and usages of the Defendants as they execute, administer and enforce the complained of actions, of the rights, privileges or immunities secured by the United States Constitution through the XIV Amendment to the United States Constitution and by Act of Congress and to determine whether Defendants are culpable for actions which amount to violation of Constitutional Rights and the RICO Act for using coercion, illegal acts and the threat of unfounded litigation in retaliating against witnesses who provided evidence of fraud to HUD.  Plaintiffs further bring action for fraud, willful breach of contract, violation of the Missouri Merchandising Practices Act (hereinafter "MMPA") and negligent supervision.

6.      This Court has personal jurisdiction over each of the Defendants because, inter alia, the majority of the actions complained of took place within the geographic confines of the State of Missouri within the Eastern District.

7.      Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred within St. Louis County which is within this judicial district of the Eastern District of Missouri.

## PLAINTIFFS

8.      Plaintiff Frederick Carleton (hereinafter "CARLETON") is a citizen of the United States and resident of St. Louis County, State of Missouri and currently resides at 8 Millstone Campus Drive, #441, St. Louis, Missouri 63146 known as Covenant Place and is a senior citizen having resided there for (6) years.

9.      Plaintiff Barry Horwitz (hereinafter "HORWITZ") is a citizen of the United States and resident of St. Louis County, State of Missouri and currently resides at 10 Millstone Campus Drive, #312, St. Louis, Missouri 63146 known as Covenant Place and is a senior citizen and having resided there for three (3) years.

10.     Plaintiff Ella Raber (hereinafter "RABER") is a citizen of the United States and resident of St. Louis County, State of Missouri and currently resides at 8 Millstone Campus Drive, #308W, St. Louis, Missouri 63146 better known as Covenant Place and is a senior citizen having resided there for four (4) years.

11.     Plaintiff Dorothea Parks (hereinafter "PARKS") is a citizen of the United States and resident of St. Louis County, State of Missouri and currently resides at 10 Millstone Campus Drive, #220 St. Louis, Missouri 63146 better known as Covenant Place, and is a senior citizen having resided in Covenant buildings for ten (10) years.

12.     Plaintiff Ann Frank (hereinafter "FRANK") is a citizen of the United States and resident of St. Louis County, State of Missouri and currently resides at 10 Millstone Campus Drive, #413, St. Louis, Missouri 63146 address better known as Covenant Place and is a senior citizen having resided there for six (6) years.

13.     Plaintiff Sherri Frank Weintrop (hereinafter "WEINTROP") is a citizen of the United States and resident of St. Louis County, State of Missouri and is the daughter of Plaintiff FRANK as well as a Certified Public Accountant ("CPA").

## DEFENDANTS

14. Defendant COMMUNITY HOUSING MANAGMENT CORP. (hereinafter "COV MGMT") is a Missouri Nonprofit Corporation which controls the management of the three (3) Covenant Place buildings, Covenant Place I, LLC, Covenant Place II, LLC and Covenant Place III, LLC (hereinafter collectively "COV BLDGS").

15. Defendant Joan Denison (hereinafter "DENISON") is a citizen of the United States and resident of St. Louis County, State of Missouri and was employed by COV MGMT as the person in charge of COV BLDGS management and she was charged with supervising the staff underneath her and all times acted within the course of her employment for COV MGMT as their agent.

16. Defendant Katisha Reese (hereinafter "REESE"), is a citizen of the United States and resident of the State of Missouri and was employed by COV MGMT during the action alleged in this complaint and acted within the scope of her employment for COV MGMT as their agent.

17. Defendant Jacqueline Jones/Taylor (hereinafter "JONES"), is a citizen of the United States and resident of the State of Missouri and was employed by COV MGMT during the action alleged in this complaint and acted within the scope of her employment for COV MGMT as their agent.

18. Defendant Randall Reinker (hereinafter "REINKER") is Missouri licensed attorney and a partner at the firm of Reinker, Hamilton, & Fenley LLC, who

operated and directed others in conspiracy with the remainder of the Defendants to achieve a larger goal of Racketeering by using fraudulent means to evict tenants and retaliate against witnesses who provided testimony or evidence that Defendants were acting in bad faith. This conduct goes beyond a simple malicious prosecution or abuse of process as it is a part of a larger scheme of fraud to obtain money for REINKER and his firm and possession of real property for their clients all while abusing the elderly through use of fear and intimidation.

## FACTS COMMON TO ALL COUNTS

19.     Plaintiffs CARLETON, HORWITZ, RABER, PARKS and FRANK are all senior citizens and residents of COV BLDGS which are managed by Defendant COV MGMT and some tenants receive federal subsidies through the U.S. Department of Housing and Urban Development (hereinafter "HUD") for such residences within COV BLDGS.

20.     Each Plaintiff who is a tenant signed a lease with COV MGMT, such lease is form HUD-90105a (hereinafter "Lease") and attached to this complaint as if fully pled herein.

21.     Although the date each Lease was signed is different the contents of the Lease are the same.

22.     Such Lease requires tenants to provide financial information to COV MGMT to be provided to HUD so that recertification may take place regarding the tenants HUD subsidies and recalculation of their rent.

23.    COV MGMT is then required by the Lease to provide such information to HUD so that tenants can receive federal subsidies lowering the amount of rent they are to pay.

24.    Defendant DENISON was hired by COV MGMT and in turn hired and retained Defendant REESE and JONES to act as "recertification specialists" assisting the elderly in recertifying their HUD subsidies.

25.    Between November of 2020 and January 7, 2022 Defendants REESE and JONES at the instruction of DENISON improperly conducted recertifications at COV BLDGS attempting to force CARLETON, HORWITZ, RABER and PARKS to sign HUD recertification forms which contained false income information.

26.    CARLETON, HORWITZ, RABER and PARKS were given the ultimatum by Defendants REESE and JONES to either sign the false documents and lose some of the HUD subsidies or don't sign the false documents, lose the subsidy entirely and face eviction when they could not afford the astronomical market rent of over $1,000 per month.

27.    The Lease which is sanctioned by HUD, a Federal Housing Authority, allows tenants to supplement the information in their recertification to show their actual income but Defendants REESE and JONES refused to allow tenants to provide such accurate information of their income to be considered or explain how COV MGMT came to their recertification numbers, in breach of the Lease.

28.     Plaintiff WEINTROP whose mother also resides in COV BLDGS attempted to assist CARLETON, HORWITZ, RABER and PARKS in explaining to REESE, JONES and DENISON that the calculations were incorrect as she is a CPA and has superior knowledge of calculating income.

29.     REESE, JONES and DENISON refused to accept such information in violation of the Lease and instead retaliated against WEINTROP and her mother FRANK by banning WEINTROP from the facility under false pretense and threatening to evict FRANK under the same false pretense.

30.     Defendants jointly followed through with their threats and hired REINKER who used false information to unlawfully obtain a Summary Decision to evict RABER and PARKS and attempted to coerce the remainder of the Plaintiffs to violate federal law by signing false recertification documents provided by REESE, JONES and DENISON.

31.     Plaintiff CARLETON received four (4) separate letters, two (2) of which were dated on the same day, but all arriving in one envelope from COV MGMT through REESE and JONES stating four (4) different amounts of rent he was to pay.

32.     Upon asking for clarification, CARLETON received a threat from Defendant REINKER that he was being evicted for non-compliance with the lease despite it not being clear what amount to pay or how he had violated the Lease.

33.     Defendants claim that their notice of violation of the Lease is adequate notice under HUD regulations and Missouri law despite the notice being so vague an average person could not understand its meaning let alone an elderly individual.

34.     However, such notice is clearly based on false information and is therefore a fraud and untrue which does not adequately provide the notice required by the United States Constitution or HUD regulations so that Plaintiffs could adequately defend against allegations of Lease violations.

35.     Plaintiff HORWITZ under the threat of an unlawful eviction signed the false HUD recertification raising his rent and lowering the subsidy damaging him financially and affecting interstate commerce in the amount of their federal subsidies.

36.     Plaintiff RABER and PARKS refused to sign such false information pointing out that signing such false information is also a violation of the Lease.

37.     Plaintiffs CARLETON and HORWITZ are under threat of eviction for not signing recertification paperwork that they were never provided.

38.     HORWITZ received a letter from REINKER dated January 14, 2022 notifying him that his lease was being terminated for non-compliance despite HORWITZ never receiving the required recertification forms to sign.

39.     Defendants jointly through REINKER filed unlawful detainer actions against RABER and PARKS on July 8, 2021 and subsequently a motion for summary judgment containing false information and did so allegedly under the authority of HUD.

40.     REINKER did so in furtherance of the enterprise between himself and the other Defendants so that RABER and PARKS would be deprived of a jury trial as allowed by statute and Defendants' fraud would remain undiscovered.

41.     RABER and PARKS are currently set to be evicted upon execution of a judgment based upon fraudulent information if they cannot post a bond which is outside of their ability to pay, CARLETON still has not been provided with an accurate amount to pay as rent and is under the steady threat of eviction and HORWITZ continues to be forced to pay amounts he does not owe while FRANK and WEINTROP suffer the threat of criminal prosecution for a made-up offense.

## COUNT I-BREACH OF CONTRACT

42.     Paragraphs 1 - 41 are realleged and incorporated herein by reference.

43.     Plaintiffs CARLETON, HORWITZ, RABER, PARKS and FRANK all have a valid signed the Lease with Defendant COV MGMT.

44.     Such Lease gave both parties rights to perform under the Lease granting Plaintiffs quiet enjoyment of the premises in exchange for rent, and as such consideration was exchanged in the form of rent payments and the promise of quiet enjoyment of said property.

45.     However, Defendants intentionally and materially breached the Lease by failing to act in refusing to accept information regarding recertification income from CARLETON HORWITZ, RABER and PARKS and providing false information to HUD thus causing Plaintiffs' damages.

46.     Defendants further did not allow the Plaintiffs to have quiet enjoyment of their premises as they were harassed by Defendants in violation of their Lease.

47.     Such breach was a material breach without justification by Defendants COV MGMT through the actions of REESE, JONES and DENISON who acted jointly for a purpose of evicting people who questioned their competence and controlling such real property in order to make money for themselves either through their continued salary for a job they were not performing properly or in the case of REINKER by evicting tenants under false pretense.

48.     Plaintiffs have established 1) the existence of a valid contract, the Lease; 2) plaintiff's tendered performance by providing proof of income and paying rent; 3) the defendants' breach of the contract by refusing to accept such proof of income to provide to HUD or allowing Plaintiffs to have quiet enjoyment of the presmises; and 4) damages resulted in the loss of quiet enjoyment of the premises and loss of subsidies as a result of the breach, which is necessary to prevail under federal law.

WHEREFORE, Plaintiffs, CARLETON, HORWITZ, RABER, PARKS and FRANK request this Court order equitable relief for Plaintiffs, 1) ordering Defendants to refrain from executing the eviction judgments as to allow Plaintiffs to have quiet enjoyment of their leased premises and 2) order Defendants to allow Plaintiffs' to present evidence of their accurate income to HUD authorities so that their correct HUD subsidy and rent can be calculated and 3) further ask that Defendants be jointly and severally liable, for monetary damages in the form of any additional amounts of

lost HUD subsidies caused by Defendants breach and for any other and further relief as this Court may deem just in the circumstances.

## COUNT II-VIOLATION OF THE MMPA

49.  Paragraphs 1 - 48 are realleged and incorporated herein by reference.

50.  "The purpose of the [MMPA] is to preserve fundamental honesty, fair play and right dealings in public transactions." *Lane House Constr., Inc. v. Triplett,* 533 S.W.3d 801 (Mo. App., 2017).

51.  The MMPA covers transactions of a consumer nature purchased primarily for personal, family or household purposes including, leases for real estate as outlined in R.S.Mo. §407.025.

52.  Pursuant to R.S.Mo. § 407.020:

1.  The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for charitable purpose, as defined by section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filings required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared to be an unlawful practice by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

53.    Here, Plaintiffs CARLETON, HORWITZ, RABER, PARKS and FRANK have all demonstrated they purchased merchandise by signing the Lease, for personal purposes of living in the leased premises, and have suffered an ascertainable loss of money or property as a result of Defendants unlawful conduct.

54.    Defendants have refused to abide by the terms of the Lease in refusing to allow tenants quiet enjoyment and refusing to accept accurate proof of income causing Plaintiffs to be forced to pay more rent than they should have as a result of the loss of federal subsidy, or are being evicted for refusing to sign false forms prepared by Defendants.

55.    Section 3 of the MMPA makes such acts illegal, "3. Any person who willfully and knowingly engages in any act, use, employment or practice declared to be unlawful by this section with the intent to defraud shall be guilty of a class E felony."

56.    Defendants acted willfully as WEINTROP through the tenants informed Defendants of such miscalculations but they continued to use fraud and deception in violating the terms of the Lease to harm Plaintiffs by providing false information of income to HUD and falsely alleging Plaintiffs violated the Lease despite Defendants breaching material terms of the Lease.

57.    Defendants each acted together to achieve such goal as a group and as such should be held jointly and severally liable for damages for such willful acts.

WHEREFORE Plaintiffs CARLETON, HORWITZ, RABER, PARKS and FRANK pray this Court find the actions of Defendants illegal as they used fraud and

false promise of adhering to a Lease to secure payment from Plaintiffs, then refused to abide by such terms using fraud to damage them in their right to HUD subsidies and a place to live in quiet enjoyment and that Defendants are jointly and severally liable for their monetary damages in excess of $10,000.00 including attorney's fees as allowed by the Act and any other and further relief as this Court may deem just in the circumstance.

### COUNT III-FRAUD

58.     Paragraphs 1 - 57 are realleged and incorporated herein by reference.

59.     COV MGMT hired DENISON to act as their agent and oversee COV BLDGS including REESE and JONES who along with REINKER committed both common law fraud as well as wire and mail fraud.

60.     18 U.S.C. §1341 and §1343 outline the elements of Mail and Wire Fraud requiring the use of an interstate mail/telephone call or electronic communication made in furtherance of the scheme, the only difference is whether it is via mail or wire.

61.     These elements are more clearly delineated in case law as 1) The defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money; 2) that the defendant did so with the intent to defraud; 3) that it was reasonably foreseeable that interstate mail/wire communications would be used; and 4) that interstate wire communications were in fact used.

62.     Here Plaintiffs state Defendants intentionally used mail and wire to send letters terminating Plaintiffs leases, despite not having the legal right to do so, and such communications contained false information regarding federal HUD subsidies to the

Plaintiffs, to the Department of Urban Housing and Development and the Missouri State Courts for them to rely upon.

63.     Pursuant to Rule 9(b), the time, place and content and fraudulent acts were as follows:

   a. DENISON ordered REESE, JONES and REINKER to take the following fraudulent actions on the following dates in the following manner.

   b. REESE took the following actions against the following Plaintiffs:

      i. CARLETON-received a letter from REESE on 8/12/2021 stating that his rent amount was $556.00 effective 8/1/2020 but then on the same day received an identical letter stating that his rent amount was $712.00 effective 10/1/2020 and then received a third letter from the same date sent by REESE stating his rent amount was $717.00 effective 11/1/2020 and finally received a fourth letter the same day stating his rent amount was $724.00 effective 11/1/2021.  Each of these letters had a HUD form 50059 attached which contained false information regarding CARLETON's income, such representations by REESE were false and she knew they were false.

      ii. RABER-received a letter from REESE on 4/7/2021 stating that her rent amount was $689.00 based on her income and

included the HUD form 50059 which contained false information regarding RABER's income. REESE knew such information was false.

   iii. HORWITZ-received a letter from REESE notifying him of his rent increase to $1,058.00 effective 12/1/2020 with a HUD form 50059 attached, such form contained false information relating to HORWITZ's income thereby affecting his rent. HORWITZ received a second letter from REESE dated 8/16/2021 demanding evidence of income that did not exist in the form of a Goldman Sachs account that had previously been closed or else he would be in violation of his lease which was false. REESE knew such information was false.

   iv. PARKS-received a letter from REESE stating her rent would increase to $639.00 effective 4/1/2021 with a HUD 50059 form attached.  Such information was false and REESE was aware of that such information was false when she sent it.

c. JONES took the following actions against the following Plaintiffs:

   i. CARLETON-received a letter revoking his subsidy "due to your failure to recertify in a timely manner", "because of your failure to sign the HUD 50059, the subsidy for your unit will be terminated" on 10/8/2021 despite him supplying the relevant

income information and REESE and JONES refusing to accept such information pursuant to the Lease to take to HUD. JONES knew such information was false because she and REESE had provided multiple forms making it impossible for CARLETON to know which to sign. JONES also sent a letter dated 11/16/2021 titled Notice of Termination of Lease due to "material non-compliance", "you have violated your lease by having an adverse financial effect on the project, failing to timely supply all required information to meet the disclosure and verification requirements, signing the required HUD 50059 form, and failing to timely pay rent."  This information again was false as he had submitted all required information nevertheless JONES filed an affidavit to the contrary.

ii. PARKS-received a letter dated 5/18/2021 terminating her subsidy due to failure to recertify in a timely manner. "According to our records, you have been paying rent in the amount of $639.00. This is not the amount of rent that you are to pay."  This was false as PARKS had tried to comply and JONES sent a letter dated 4/8/2021 stating that PARKS rent was adjusted to $639.00 effective 4/1/2021 and that she owed an outstanding balance of $1,774.00. JONES sent another letter

dated 6/4/2021 stating that PARKS lease was terminated and her subsidy was terminated as of 3/31/2021 despite the 4/8/2021 letter stating her rent amount including subsidy. Clearly one if not both letters contained false information.

iii. RABER-received a letter dated 5/18/2021 from JONES that her subsidies were terminated due to her failure to recertify in a timely manner however, this information was false as RABER gave additional information to REESSE on two separate occasions but REESE refused to recalculate the "other income" on the Form 50059. RABER also received a letter dated 6/4/2021 from JONES terminating her lease based on her failure to timely recertify which was again false as she had attempted to timely recertify.

iv. HORWITZ-received a letter dated 10/8/2021 from JONES terminating his subsidy for his failure to sign the HUD 50059 form and that because of such failure his rent would increase to market rate of $1,526.00 and him being given a 30 day notice to vacate despite him never receiving a HUD form 50059 to sign by any representative of Defendants and as such the content of that letter was clearly false.

d. REINKER took the following actions against the following Plaintiffs:

i. CARLETON-received a letter from REINKER's employee at his demand, terminating CARLETON's Lease for fraudulent reasons which were made up and include it being terminated due to material non-compliance alleging violations of his lease which had an adverse financial impact on the project in failing to timely supply all required information to meet the disclosure and verification requirements and for refusing to sign the HUD 50059 form and timely pay rent.  However, CARLETON did timely submit all information and simply asked for which amount he was to pay and which was an accurate HUD 50059 form as he received four (4). This document was also signed in the form of an affidavit by JONES and was false.

ii. HORWITZ-received a letter from REINKER on 8/6/2020 stating his rent increased in October of 2020 due to his recent unexplained increase in income.  HORWITZ's income did not increase as he tried to explain he had received reimbursement from his sister but it was not income.  REINKER continued with this false information as if HORWITZ's explanation was not acceptable despite the Lease requiring him to accept it. HORWITZ was somehow attributed an additional $24,252 of

income that no one could explain why it showed up to him as income as he never received that money.

iii.   PARKS-was evicted because REINKER sent information, he knew to be false to the court through wire on 9/27/2021 in the form of Plaintiff's Statement of Uncontroverted Material Facts stating that PARKS Lease was terminated for material non-compliance and for other good cause despite knowing that PARKS had attempted to recertify and it was REESE, JONES and DENISON who had refused to comply with the Lease. Defendants through REINKER electronically filed with St. Louis County Courts documents which contained more false information in that it claimed PARKS lost her subsidy and her non-payment was the reason for her termination of her lease as of 4/1/2021 but PARKS received a separate letter from REESE that her rent was $639.00 effective 4/1/2021 and she received such letter on 4/8/2021 stating the representations made to the Court were false.

iv.   RABER-was evicted because REINKER sent information, he knew to be false to the court through wire on 9/27/2021 in the form of Plaintiff's Statement of Uncontroverted Material Facts stating that RABER's Lease was terminated for material non-

compliance and for other good cause despite knowing that RABER had attempted to recertify and it was REESE, JONES and DENISON who had refused to comply with the Lease. Defendants through REINKER electronically filed with St. Louis County Courts documents contained more false information in that it claimed RABER lost her subsidy and her non-payment was the reason for her termination of her lease but such recertification was to take place on 3/10/2021 and RABER did not even receive the intake packet until 4/7/2021 so it is apparent RABER did not have the opportunity to recertify as she was never provided with the paperwork by Defendants.

64.     Defendants committed common law fraud as 1) representations of fact have been made, 2) which were false, 3) the misrepresentations were material, 4) the representers knew of their falsity, 5) the representers intended that it should be acted upon by the person in the manner reasonably contemplated, 6) the injured party was ignorant to its falsity, 7) the injured party's reliance on its truth, 8) the injured party's right to rely thereon; and 9) the injured party's consequent and proximate injury.

65.     Through such acts of fraud, Defendants REESE and JONES sought to cover up their miscalculations of HUD subsidies and with the assistance of DENISON, who all were aware of such miscalculations.

66.     In furtherance of this conspiracy, they hired REINKER to punish tenants who complained that REESE, JONES and DENISON were violating the Lease.

67.     Defendants REESE, JONES and DENISON took these actions to protect their jobs and resulting income derived therefrom despite not performing their job duties and abiding by the terms of the Lease on behalf of COV MGMT, such Lease was relied upon by all of the Plaintiffs who were tenants, to their detriment in signing the Lease and moving in to COV BLDGS.

68.     The representations in the Lease, which are in writing between COV MGMT and CARLETON, HORWITZ, RABER, and PARKS allowed them to provide accurate income numbers so their HUD subsidy could be calculated, such representations were false as REESE, JONES and DENISON knew of their falsity and intended only to provide such information which they deemed appropriate which was a breach of a material term of the lease which was relied upon by Plaintiffs in signing such Lease.

69.     Such false representations by Defendants individually and jointly in furtherance of their improper goals are the proximate cause of Plaintiffs damages as they were not allowed to present such accurate information and are now either paying too much or are under the unlawful threat of eviction.

WHEREFORE, CARLETON, HORWITZ, RABER, PARKS and FRANK pray this Court find that Defendants jointly and severally committed acts which amount to mail fraud, wire fraud and common law fraud, which are the proximate cause of

Plaintiffs damages resulting from such intentional and willful misrepresentation and that Plaintiffs recover from Defendants their actual monetary damages in an amount in excess of $10,000.00, punitive damages to discourage such similar behavior in the future and any other and further relief as this Court may deem just in the circumstances.

## COUNT IV-CIVIL RIGHTS VIOLATIONS

70.     Paragraphs 1 - 69 are realleged and incorporated herein by reference.

71.     Amendment XIV to the U.S. Constitution states in part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

72.     The Missouri Constitution contains similar language.

73.     Defendants COV MGMT through REESE, JONES and under the direction of DENISON hired REINKER used fraud to unlawfully evict Plaintiffs through the Missouri State Courts allegedly under the authority from HUD, depriving Plaintiffs of their right to a jury trial or defense, without due process of law, by providing false information to the court as part of such legal actions.

74.     REINKER presented information he knew to be false in order to deprive Plaintiffs of their rights under the law including, falsely alleging they could be evicted

or arrested for conduct which is lawful and further presenting information he knew to be false to institute a lawsuit and file a motion for summary decision.

75.     Plaintiffs state Defendants jointly, acting under the Federal Housing Authority's authorization, improperly terminated RABER and PARKS Federal Housing Subsidies and threatened the rest of the Plaintiffs with legal action through the Missouri State courts which could not legally be taken thereby depriving them of their due process rights through state action in combination with Defendants joint actions described in this complaint.

76.     Defendants conspired to bring legal action based on false information to deprive Plaintiffs RABER and PARKS of a right to a trial by jury as allowed by R.S.Mo. §534.160 or to defend themselves through the Courts in any meaningful way on the merits.

77.     When Defendants falsely claimed that RABER and PARKS violated their Lease and submitted such documents to the Missouri State Courts and HUD, this deprived RABER and PARKS of their right to due process and equal access to federal subsidies and Defendants took such actions under the alleged authority of a federal agency, and such actions prevented RABER and PARKS from addressing the merits of their case where they would have been successful in the defense of their unlawful detainer action showing Defendants were not in compliance with HUD regulations and did not have HUD authority to terminate their leases.

78.     Such actions were taken deliberately under color of law by fraudulent use of the Courts and false authority of a federal agency, HUD, with the intent to deprive senior citizens of their property rights under the Lease through improper use of the law which violates the Missouri Constitution Due Process Clause and the United States Constitution Due Process Clause.

WHEREFORE Plaintiffs RABER and PARKS pray that this Court determine that their rights to due process under the United States and Missouri Constitution have been violated by Defendants, that the joint actions of Defendants towards this goal makes them jointly and severally liable for the damages of RABER and PARKS including over $10,000.00 in damages and attorney's fees under 42 U.S.C. §1988 and other and further relief as this Court may deem just in the circumstances.

## COUNT V-RICO VIOLATION

79.     Paragraphs 1 - 78 are realleged and incorporated herein by reference.

80.     Defendant REINKER violated 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise through a common pattern of racketeering activity.

81.     18 U.S.C. 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt.

82.    In order to succeed in a civil RICO action Plaintiffs must allege 1) an enterprise existed, 2) defendants derived income from a pattern of racketeering activity and 3) the use of any part of that income in acquiring an interest in or operating the enterprise.

83.    Plaintiffs allege an enterprise existed between REESE, JONES, DENISON and REINKER, where REINKER derived income through evicting tenants using wire and mail fraud.  He did so in order to protect the jobs and paychecks of REESE, JONES and DENISON who were also using fraud, coercion to obtain money for COV MGMT who issued their paychecks and paid REINKER per eviction.

84.    Plaintiffs allege REINKER participated in wire and mail fraud in mailing and filing documents which he knew contained false information to the state court in evicting RABER and PARKS and threatening letters to the rest of the Plaintiffs in order to illegally coerce and extort monies Defendants which they were not legally entitled to under the Lease.

85.    REINKER also engaged in racketeering through making illegal and perverse threats to WEINTROP and FRANK, who is a senior citizen suffering from neurological disease.  Specifically, REINKER threatened WEINTROP with arrest and FRANK with an unlawful eviction should WEINTROP attempt to visit her elderly mother at COV BLDGS.  This was a blatant retaliation for WEINTROP's attempts to assist the other Plaintiff tenants in disputing the improper cancelation or manipulation of their HUD subsidies by the COV MGMT defendants.  REINKER's conduct was an

egregious abuse of process and unlawful conspiracy because REINKER conspired with the other defendants to make illegal threats against WEINTROP and FRANK that were neither warranted nor authorized by law and which could not be taken except through fraudulent action.

86.    REINKER engaged in such activities at the behest of REESE, JONES and DENISON creating an enterprise where he derived money from unlawfully threatening evictions or arrest of Plaintiffs, in order for the enterprise to maintain control of the COV BLDGS, so they could all derive income from such property management, despite using fraud and coercion to maintain such control.

87.    Plaintiffs allege REINKER himself and through actions of his employees at his direction coerced and extorted the elderly on multiple occasions using fraud for his own profit, charging COV MGMT for each senior he evicted unlawfully, thereby at least indirectly deriving income from his illegal actions.

88.    REINKER derived income through such practice of fraud and extortion on multiple occasions as proven by RABER and PARKS fraudulent evictions and CARLETON's notice that he was in violation of his Lease for failure to recertify and non-payment despite not being told what amount to pay nor being presented with the HUD form 50059 to sign.

89.    Such acts of coercion are considered extortion and abuse of process and are punishable under federal law for wire and mail fraud and specifically under MMPA

as a Class E Felony in Missouri which can carry up to four (4) years imprisonment making such activity racketeering activity as defined by the RICO statute.

90.    Such activities involving tenants of the COV BLDGS affect interstate commerce in that such tenants receive HUD subsidies and such activity affected the influx of federal housing subsidies into Missouri.

91.    REESE, JONES and DENISON maintained control of the properties known as COV BLDGS through their use of REINKER in their enterprise where they all derived income from acts of fraud and extortion of the elderly, for if their acts had been discovered, they would be fired and lost such significant income.

WHEREFORE Plaintiffs CARLETON, HORWITZ, RABER, PARKS, FRANK and WEINTROP pray that this Court find Defendants REESE, JONES, DENISON and REINKER actions amounted to illegal acts under the RICO statute, ordering equitable relief in preventing REINKER from evicting tenants of COV BLDGS and requiring REESE, JONES, including treble damages for the severe emotional and monetary damages caused to the parties by REESE, JONES, DENISON and REINKER's actions, for attorney's fees and any other and further relief as this Court may deem just in the circumstances

## COUNT VI-NEGLIGENT SUPERVISION

92.    Paragraphs 1 – 91 are realleged and incorporated herein by reference.

93.    COV MGMT was under a duty to supervise its employees such as DENISON, REESE and JONES to make sure they perform their duties in a reasonable

manner and failed to do so or allowed them to act in an improper way ignoring the terms of the parties Lease and unlawfully evicting the elderly.

94.    DENISON was under a duty to supervise REESE and JONES under her authority from COV MGMT and also failed to properly supervise them by allowing them to take improper actions in violating the Lease between the parties under the authority of COV MGMT.

95.    Plaintiffs all have been damaged by such negligence, failure to train staff, failure to train staff in how to deal with the elderly and failure to correct improper actions by staff and management.

WHEREFORE Plaintiffs CARLETON, HORWITZ, RABER, PARKS, FRANK and WEINTROP pray that this Court find Defendants COV MGMT and DENISON failed to properly supervise and such negligence by both is the proximate cause of Plaintiffs damages asking for monetary relief in an amount in excess of $10,000.00, and any other and further relief as this Court may deem just in the circumstances.

Respectfully submitted,

THE LAW OFFICE OF
MATTHEW T SINGER

/s/ Matthew T. Singer
MATTHEW T. SINGER, BAR #57764MO
ATTORNEY FOR PLAINTIFFS
7505 DELMAR BLVD.
ST. LOUIS, MISSOURI 63130
E-MAIL: MTSINGER@MTSINGER.COM
T: (314) 272-3388

F: (877) 816-7884